ORAL ARGUMENT NOT YET SCHEDULED

## 24-1193
(and consolidated cases)

# United States Court of Appeals
# for the District of Columbia Circuit

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA, et al.,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

On Petition for Review of Final Action
by the United States Environmental Protection Agency

**BRIEF FOR STATES OF NEW YORK, ARIZONA, COLORADO, CONNECTICUT, ILLINOIS, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, OREGON, WASHINGTON, AND WISCONSIN, AND THE DISTRICT OF COLUMBIA, AS AMICI CURIAE IN SUPPORT OF RESPONDENTS**

BARBARA D. UNDERWOOD
  *Solicitor General*
JUDITH N. VALE
  *Deputy Solicitor General*
JOSHUA N. COHEN
  *Assistant Solicitor General*
PHILIP BEIN
  *Senior Counsel*
KYLE BURNS
MIHIR DESAI
  *Assistant Attorneys General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
28 Liberty Street
New York, New York 10005
(212) 416-8039

Dated: January 24, 2025

(*Additional counsel listed on signature pages.*)

## CERTIFICATE AS TO PARTIES,
## RULINGS, AND RELATED CASES

(A) **Parties and Amici:** Except for amici curiae New York, Arizona, Colorado, Connecticut, the District of Columbia, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, Oregon, Washington, and Wisconsin, all parties, intervenors, and amici appearing before this Court are listed in the Brief for U.S. Environmental Protection Agency, Doc. No. 2094951.

(B) **Rulings Under Review:** References to the rulings at issue appear in the Brief for U.S. Environmental Protection Agency, Doc. No. 2094951.

(C) **Related Cases:** This case has not previously been before this Court or any other court. There are no "other related cases," as defined by Circuit Rule 28(a)(1)(C).

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

GLOSSARY ................................................................................... vii

INTERESTS OF AMICI CURIAE ........................................................ 1

SUMMARY OF THE ARGUMENT ..................................................... 2

ARGUMENT .................................................................................. 5

    I.    THE RULE PROPERLY DESIGNATES PFOA AND PFOS AS HAZARDOUS SUBSTANCES BECAUSE THEY PRESENT SUBSTANTIAL DANGER TO PUBLIC HEALTH, WELFARE, AND THE ENVIRONMENT. ............................................................. 5

        A.    Scientific Evidence Amply Supports the Designation of PFOA and PFOS as Hazardous Substances Given Their Toxicity, Prevalence, Persistence, and Mobility in the Environment. ........... 6

        B.    In Amici States' Experience, PFOA and PFOS Cause Substantial Harm to Public Health, Welfare, and the Environment. .................................. 13

    II.   THE RULE WILL ENHANCE STATES' ABILITIES TO RESPOND TO PFOA AND PFOS CONTAMINATION PROMPTLY AND EFFECTIVELY, WHILE HOLDING THE PARTIES PRIMARILY RESPONSIBLE FOR THE CONTAMINATION ACCOUNTABLE FOR CLEANUP COSTS. ........... 18

CONCLUSION ............................................................................. 26

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Benoit v. Saint-Gobain Performance Plastics Corp.*,
   959 F.3d 491 (2d Cir. 2020) ................................................................. 8

*Env't Def. Fund v. EPA*,
   124 F.4th 1 (D.C. Cir. 2024) ....................................................... 12, 25

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ............................................................................ 12

*New York v. Adamowicz*,
   16 F. Supp. 3d 123 (E.D.N.Y. 2014) .................................................. 20

**Statutes**

*Federal*

42 U.S.C.
   § 9601 et seq. ....................................................................................... 1
   § 9601 .................................................................................................. 23
   § 9602 ..................................................................................... 1, 5, 12, 17
   § 9603 .................................................................................................. 20
   § 9604 .................................................................................................. 19
   § 9607 .............................................................................................. 21–23
   § 9613 .............................................................................................. 21–23
   § 9620 .................................................................................................. 19
   § 9621 .................................................................................................. 19
   § 11004 ................................................................................................ 20

*State*

Alaska Stat. § 46.03.826 ......................................................................... 16

## Regulations                                                  Page(s)

*Federal*

40 C.F.R. § 302.4 tbl. ................................................................ 12, 25

43 C.F.R. § 11.15 ........................................................................... 21

Cooperative Agreements and Superfund State Contracts for
  Superfund Response Actions, 75 Fed. Reg. 49414 (Aug. 13, 2010) .......... 19

Designation of Perfluorooctanoic Acid (PFOA) and
  Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous
  Substances, 87 Fed. Reg. 54415 (Sept. 6, 2022) ................................. 17

Designation of Perfluorooctanoic Acid (PFOA) and
  Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous
  Substances, 89 Fed. Reg. 39124 (May 8, 2024) (to be codified
  at 40 C.F.R. pt. 302) ...................................... 1, 6–11, 13, 17–18, 20–25

PFAS National Primary Drinking Water Regulation, 89 Fed. Reg.
  32532 (Apr. 26, 2024) (to be codified at 40 C.F.R. pts. 141–142) ........... 8

*State*

Alaska Admin. Code tit. 18
  § 75.341 tbl.B1 ................................................................. 16
  § 75.345 tbl.C .................................................................. 16

Colo. Code Regs. § 1007-3 pt. 261 app. VIII .......................................... 16

7 Del. Admin. Code § 1375-2.0 ................................................... 16

301 Mass. Code Regs. 41.03 ...................................................... 16

Mich. Admin. Code r. 299.44 ..................................................... 16

N.J. Admin. Code § 7:1E app. A .................................................. 16

6 N.Y.C.R.R. § 597.3 ............................................................. 16

Wash. Admin. Code § 173-201A-240 ............................................ 16

## Miscellaneous Authorities                                      Page(s)

Agency for Toxic Substances & Disease Registry, *Per- and Polyfluoroalkyl Substances (PFAS) Exposure Assessment Report: Security-Widefield, El Paso County, Colorado* (June 2022), https://www.atsdr.cdc.gov/pfas/docs/El-Paso-Report-508.pdf ...................................................................... 14

Att'ys Gen. of the State of New York et al., Comment Letter on Proposed Designation of PFOA/PFOS as CERCLA Hazardous Substances (Nov. 7, 2022), https://www.regulations.gov/comment/EPA-HQ-OLEM-2019-0341-0414 ................................................................. 6, 19

Del. Div. of Waste & Hazardous Substances, *Hazardous Substance Cleanup Act Screening Level Table Guidance* app. A (Oct. 2024), https://documents.dnrec.delaware.gov/dwhs/remediation/HSCA-Screening-Level-Table-Guidance.pdf ................................ 16

*High Levels of Perfluorinated Compounds in Lake Holloman*, NMHealth (May 9, 2019), https://www.nmhealth.org/news/information/2019/5/?view=764 ........................................................................... 14

Interstate Tech. Regul. Council, *PFAS Regulatory Programs Table* (Sept. 2023), https://pfas-1.itrcweb.org/wp-content/uploads/2022/11/ITRCPFAS_Regulatory_Programs_Table_Sept2023.xlsx ....................................................... 16

Jordan Honeycutt, *State of New Mexico Helping Clovis Dairy That Had to Euthanize Cows*, KRQE News (May 19, 2022), https://www.krqe.com/news/state-of-new-mexico-helping-clovis-dairy-that-had-to-euthanize-cows/ ................................... 15

Letter from Att'ys Gen. of the State of New York et al. to the U.S. Senate Comm. on Env't & Pub. Works (Nov. 15, 2021), https://ag.ny.gov/sites/default/files/pfas_letter_to_epw_11.15.2021.pdf .............................................................................. 13

## Miscellaneous Authorities

Page(s)

Memorandum from David M. Uhlmann, Assistant Adm'r, Off. of
Enf't & Compliance Assurance, EPA, to Reg'l Adm'rs et al.
on PFAS Enforcement Discretion and Settlement Policy
Under CERCLA (Apr. 19, 2024),
https://www.epa.gov/system/files/documents/2024-04/pfas-
enforcement-discretion-settlement-policy-cercla.pdf ........................ 24

N.J. Dep't of Health, *Hazardous Substance Fact Sheet: Arsenic*
(2008),
https://www.nj.gov/health/eoh/rtkweb/documents/fs/0152.pdf .......... 12

N.J. Dep't of Health, *Hazardous Substance Fact Sheet:
Nitroglycerin* (2001),
https://nj.gov/health/eoh/rtkweb/documents/fs/1383.pdf ................... 12

N.M. Env't Dep't, Approval of Application for Depopulation &
Removal Plan with Narrative to Application for DIPP Cow
Buy-Out Indemnity Benefits for Highland Dairy Cow Herd:
Animal Deaths Caused by Cannon Air Force Base PFAS
Contamination (May 12, 2022),
https://www.env.nm.gov/pfas/wp-
content/uploads/sites/25/2022/05/2022-05-12-Highland-
Dairy-Depop-Removal-Plan-and-App-Narrative-Final.pdf ............... 15

N.Y. Dep't of Env't Conservation, *Per- and Polyfluoroalkyl
Substances (PFAS)* (n.d.), https://dec.ny.gov/environmental-
protection/site-cleanup/pfas ............................................................. 13

N.Y. Div. of Env't Remediation, Dep't of Env't Conservation,
*2022/2023 Annual Report* (2023),
https://dec.ny.gov/sites/default/files/2023-
12/derannrpt2223.pdf ....................................................................... 14

Nat'l Ctr. for Env't Health & Agency for Toxic Substances &
Disease Registry, *PFAS Exposure Assessments Final Report:
Findings Across Ten Exposure Assessment Sites* (Sept. 2022),
https://www.atsdr.cdc.gov/pfas/docs/PFAS-EA-Final-Report-
508.pdf .............................................................................................. 10

v

**Miscellaneous Authorities**                                      **Page(s)**

Off. of Land & Emergency Mgmt., *Regulatory Impact Analysis (RIA) of the Final Rulemaking to Designate Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances* (Apr. 2024), https://www.regulations.gov/document/EPA-HQ-OLEM-2019-0341-0835 ............................................................. 15–16

*PFAS Strategic Roadmap: EPA's Commitments to Action 2021–2024*, EPA (updated Nov. 15, 2024), https://www.epa.gov/pfas/pfas-strategic-roadmap-epas-commitments-action-2021-2024 ....................................... 24

Sophie Greene & Catherine Neuschler, Minn. Pollution Control Agency, *Minnesota's PFAS Blueprint: A Plan to Protect Our Communities and Our Environment from Per- and Polyfluorinated Alkyl Substances* (Feb. 2021), https://www.pca.state.mn.us/sites/default/files/p-gen1-22.pdf .......... 24

# GLOSSARY

| | |
|---|---|
| CERCLA | Comprehensive Environmental Response, Compensation, and Liability Act |
| EPA | Environmental Protection Agency |
| PFAS | Per- and polyfluoroalkyl substances |
| PFOA | Perfluorooctanoic acid |
| PFOS | Perfluorooctanesulfonic acid |

## INTERESTS OF AMICI CURIAE

Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., to establish a framework for cleaning up sites contaminated with hazardous substances while holding the parties primarily responsible for the contamination liable for the cleanup costs. In the rule challenged here,[1] the Environmental Protection Agency (EPA) exercised its statutorily delegated authority to designate two substances—perfluorooctanoic acid (PFOA) and perfluorooctanesulfonic acid (PFOS)—as "hazardous substances" under CERCLA based on the agency's determination that these substances "when released into the environment may present substantial danger to the public health or welfare or the environment," 42 U.S.C. § 9602(a).[2]

The States of New York, Arizona, Colorado, Connecticut, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico,

---

[1] Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 89 Fed. Reg. 39124 (May 8, 2024) (to be codified at 40 C.F.R. pt. 302) (the "Rule").

[2] All references to PFOA and PFOS in this brief include the chemicals' salts and isomers, which are also covered by the Rule. *See* 89 Fed. Reg. at 39125 n.1.

Oregon, Washington, and Wisconsin, and the District of Columbia, submit this brief in support of respondent EPA and in opposition to the petition for review. The Rule unlocks CERCLA's highly effective toolkit to clean up PFOA- and PFOS-contaminated sites across the country. Amici States have compelling interests in such remedial efforts to protect the public health and welfare of our residents and the environment in which they live. PFOA and PFOS are toxic, move readily into water and soil, and do not degrade for extremely long periods of time. Thus, these "forever chemicals" present substantial dangers to people and natural resources in Amici States. Vacatur of the Rule would hinder state and federal efforts to address PFOA and PFOS contamination and to provide safe water for drinking, agriculture, and recreation within Amici States' respective jurisdictions.

## SUMMARY OF THE ARGUMENT

I.    The EPA properly designated PFOA and PFOS, two of the most widely used and understood types of per- and polyfluoroalkyl substances (PFAS), as hazardous substances under CERCLA. As both extensive scientific evidence in the record and Amici States' experience establish, these chemicals present substantial dangers to public health,

2

welfare, and the environment when they are released into the environment.

Numerous scientific studies have found that PFOA and PFOS are harmful to human health. Exposure to these chemicals is particularly harmful to the growth and development of fetuses and children. And these chemicals have also been linked to adverse health effects in adults as well. Research confirms that certain properties of PFOA and PFOS result in these chemicals spreading throughout the environment and accumulating over time—which makes prolonged human exposure to these chemicals more likely if contamination goes unremedied. For example, PFOA and PFOS persist for long periods of time without degrading, resulting in them accumulating in soil, water sources, food, and humans. And these chemicals move easily after released, and thus can move into soil, water sources, and food sources. The EPA engaged in reasoned decision-making, well within the boundaries of its broad statutory authority, when it explained why these characteristics warrant PFOA's and PFOS's designation as hazardous substances.

States' experience with PFOA's and PFOS's harms further confirms that the EPA acted reasonably in designating them as hazardous sub-

stances. Elevated levels of PFOA and PFOS have been detected in rivers, lakes, streams, and the drinking water for millions of people across the country. And many States have incurred substantial costs responding to contaminated sites, testing public and private water resources, installing water treatment technologies for drinking water, and providing for alternate water supplies to their residents. Without the EPA's designation of PFOA and PFOS as hazardous substances, those costs are more likely to be borne by state taxpayers rather than by the parties primarily responsible for the contamination. And significant releases of these chemicals would go unreported, undermining many States' remedial efforts.

II.    States have decades of experience cleaning up hazardous substances like PFOA and PFOS and holding the parties primarily responsible for the contamination accountable under CERCLA. Based on this experience, there is no merit to petitioners' unsubstantiated speculation that applying CERCLA to PFOA and PFOS will result in limitless, unfair liability. There is no reason to expect that this designation would be different than any of the previous designations of ubiquitous substances. To the contrary, designating PFOA and PFOS provides States with enhanced tools to respond to PFOA and PFOS contamination

promptly and efficiently while ensuring that response costs and natural resource damages are appropriately and fairly paid by the parties primarily responsible for the contamination.

## ARGUMENT

### I. THE RULE PROPERLY DESIGNATES PFOA AND PFOS AS HAZARDOUS SUBSTANCES BECAUSE THEY PRESENT SUBSTANTIAL DANGER TO PUBLIC HEALTH, WELFARE, AND THE ENVIRONMENT.

As the EPA correctly explains, it reasonably exercised its express statutory authority to determine that PFOA and PFOS are hazardous substances under CERCLA because both chemicals "when released into the environment may present substantial danger to the public health or welfare or the environment," 42 U.S.C. § 9602(a). *See* Br. for U.S. EPA at 11–15, 28–31. Here, the extensive administrative record and Amici States' experience amply demonstrate that the EPA properly determined that PFOA and PFOS present substantial dangers to public health, welfare, and the environment because, among other reasons, they are hazardous to human health and have characteristics that significantly increase the likelihood of human and environmental exposure to these substances. Indeed, communities and residents in Amici States' jurisdictions have experienced and continue to experience the dangers of PFOA and PFOS.

### A. Scientific Evidence Amply Supports the Designation of PFOA and PFOS as Hazardous Substances Given Their Toxicity, Prevalence, Persistence, and Mobility in the Environment.

Extensive scientific evidence in the administrative record amply supports the EPA's determination that PFOA and PFOS present substantial dangers to public health, welfare, and the environment. As many of Amici States here explained in public comments supporting the EPA's designation of PFOA and PFOS as hazardous substances under CERCLA, "a substantial body of scientific evidence shows that PFOA/PFOS are persistent, pervasive, and mobile in the environment and that exposure to even small amounts of either chemical can lead to adverse human health effects." Att'ys Gen. of the State of New York et al., Comment Letter on Proposed Designation of PFOA/PFOS as CERCLA Hazardous Substances 2 (Nov. 7, 2022).[3]

Numerous studies demonstrate that exposure to relatively small amounts of either chemical can lead to an array of adverse human health effects. *See* 89 Fed. Reg. at 39143–46 (collecting studies and literature).

---

[3] (For sources available online, complete URLs are in the Table of Authorities. All websites were last visited on January 24, 2025.)

6

These studies establish that PFOA and PFOS can be transmitted to fetuses via maternal blood and to newborns, infants, and children via breast milk or formula made with contaminated water. *Id.* at 39143–44. Fetuses are particularly sensitive to these chemicals, and exposure can have severe developmental effects, such as low birth weight, smaller head circumference at birth, and skeletal variations. *Id.* PFOA and PFOS exposure also increases the risk of high blood pressure during pregnancy, which can lead to maternal complications and poor fetal growth or stillbirth. *Id.* at 39146. Exposure to these chemicals is also linked to accelerated puberty, immunosuppression, and high cholesterol in children. *Id.* at 39144–45.

The scientific literature demonstrates that PFOA and PFOS are hazardous to the health of adults as well. For example, the International Agency for Research on Cancer has classified PFOA as carcinogenic to humans and PFOS as possibly carcinogenic to humans. *Id.* at 39145 (citing Shelia Zahm et al., *Carcinogenicity of Perfluorooctanoic Acid and Perfluorooctanesulfonic Acid*, Lancet Oncology (Nov. 30, 2023)). Similarly, the EPA has determined that PFOA and PFOS are likely to be carcinogenic to humans based on evidence that these substances are linked to

testicular, kidney, and breast cancer (for PFOA) and liver cancer (for PFOS). *Id.* PFOA and PFOS exposure can also lead to liver damage, increased cholesterol, decreased thyroid hormone levels, and decreased bone density. *Id.* at 39145–46. In light of the growing consensus regarding the toxicity of these chemicals, the EPA promulgated a rule last year establishing nationwide drinking water standards for certain PFAS, including PFOA and PFOS. *See* PFAS National Primary Drinking Water Regulation, 89 Fed. Reg. 32532 (Apr. 26, 2024) (to be codified at 40 C.F.R. pts. 141–142). Courts, too, have recognized the toxicity of these chemicals. *See, e.g.*, *Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491, 495, 501–02 (2d Cir. 2020).

The scientific evidence in the record establishes that PFOA and PFOS are not only toxic but are also persistent and mobile in the environment—meaning they can easily migrate through soil and into groundwater and remain there for years without degrading. *See* 89 Fed. Reg. at 39147. Consequently, these chemicals are sometimes referred to as "'forever' chemicals." *Id.*

PFOA and PFOS were produced and used in U.S. manufacturing since the 1940s, becoming widely used in commercial and consumer

products. *See id.* at 39139. For decades, they were often released through wastewater and other waste streams. *See id.* at 39139–40. Because of this widespread use, PFOA and PFOS became prevalent in soil, water sources, plants, and animals. And because PFOA and PFOS persist for long periods of time without degrading, these substances have remained prevalent despite more recent efforts to phase them out. *See id.* at 39140. Today, both chemicals are still used in smaller quantities for more limited purposes, and facilities continue to release significant amounts of them into the environment. *See id.*

The mobility and persistence of these chemicals increase the likelihood of human exposure from a release. And the prevalence of PFOA and PFOS in the environment, along with these chemicals' ability to accumulate over time, creates a greater potential for communities to be exposed to these substances at concentrations that could result in adverse health effects. *See id.* at 39141–43. For example, PFOA and PFOS have been detected in the air, groundwater monitoring wells, drinking-water wells and systems, surface waters, landfills, wastewater treatment systems, agricultural fields, livestock, and wildlife. *See id.* at 39147. They have also been detected in meat, dairy products, fish, eggs, vegetables,

and snack foods. *Id.* at 39148. Humans can thus be exposed to PFOA and PFOS through multiple sources, including ingestion of contaminated water, plants, and animals. *Id.* at 39147–48.

The fact that PFOA and PFOS degrade at very slow rates further contributes to their dangerousness because these chemicals can accumulate in humans. *See id.* at 39126, 39144. A recent health survey detected PFOA and PFOS in the blood of nearly all participants in the United States. *See id.* at 39148. Blood tests show that high levels of PFOA and PFOS persist even after drinking water has been brought below state and federal drinking-water guideline levels for these chemicals. *See* Nat'l Ctr. for Env't Health & Agency for Toxic Substances & Disease Registry, *PFAS Exposure Assessments Final Report: Findings Across Ten Exposure Assessment Sites* 60–63 (Sept. 2022). Thus, the adverse health effects from PFOA and PFOS can remain even after the contamination of a particular water source or area has been cleaned up. *See* 89 Fed. Reg. at 39144, 39147–48.

The persistence and mobility of PFOA and PFOS highlight a fundamental flaw in petitioners' argument that the EPA's reasoning here could be applied to designate as hazardous under CERCLA nearly any

substance that can harm humans if released in sufficient amounts, including commonly used substances such as table salt. *See* Opening Br. for Pet'rs (Pet'rs Br.) at 32. When the EPA designated PFOA and PFOS as hazardous substances, it appropriately considered not only the potential harm to humans or the environment from exposure to the substance (i.e., hazard) but also how the substance potentially moves, persists, or changes when it is in the environment (i.e., environmental fate and transport). *See* 89 Fed. Reg. at 39141. Not all substances that are harmful to human health if released in sufficient amounts will necessarily be as persistent or mobile in the environment as PFOA and PFOS. The Rule here is thus not overly broad (*contra* Pet'rs Br. at 31–32), because the EPA appropriately considered specific characteristics of PFOA and PFOS that render them hazardous.

Petitioners' argument that the EPA's interpretation of CERCLA section 102(a) is unreasonably broad ignores the reality that substances vary in the dangers they pose. As the EPA correctly explained, different substances present substantial dangers to public health, welfare, and the environment for different reasons. *See* 89 Fed. Reg. at 39141. For example, arsenic and nitroglycerin are both hazardous substances under CERCLA,

11

*see* 40 C.F.R. § 302.4 tbl., but arsenic is a hazardous substance because it is highly poisonous, while nitroglycerin is a hazardous substance because it is highly explosive, *see* N.J. Dep't of Health, *Hazardous Substance Fact Sheet: Arsenic* (2008); N.J. Dep't of Health, *Hazardous Substance Fact Sheet: Nitroglycerin* (2001). Accordingly, Congress's broad delegation to the EPA of authority to determine which substances "may present substantial danger to the public health or welfare or the environment" when released into the environment, 42 U.S.C. § 9602(a), provides the EPA with flexibility to consider a substance's particular characteristics and the ways in which those characteristics make that substance danger-ous. Here, the EPA engaged in reasoned decision-making, squarely within the boundaries of its statutory authority, when it considered the specific characteristics of PFOA and PFOS and determined that those characteristics make these two chemicals hazardous substances. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *Env't Def. Fund v. EPA*, 124 F.4th 1, 11–13 (D.C. Cir. 2024).

**B.    In Amici States' Experience, PFOA and PFOS Cause Substantial Harm to Public Health, Welfare, and the Environment.**

Amici States have extensive experience with the dangers of PFOA and PFOS because Amici have been investigating and remediating contamination involving these chemicals for nearly a decade. *See, e.g.*, N.Y. Dep't of Env't Conservation, *Per- and Polyfluoroalkyl Substances (PFAS)* (n.d.). This experience demonstrates that PFOA and PFOS harm public health, welfare, and the environment, as the EPA properly determined in the Rule.

PFOA and PFOS contamination has deprived communities across the country of safe water for drinking, agriculture, and recreation. Elevated levels of these chemicals have been detected in rivers, lakes, streams, and the drinking water for millions of residents in States, Tribes, and U.S. territories. *See* 89 Fed. Reg. at 39147–48. And States have incurred significant costs—tens of millions of taxpayer dollars—to respond to this contamination by, for instance, testing public and private water resources, installing water treatment technologies for drinking water, and providing for alternate water supplies. *See* Letter from Att'ys Gen. of the State of New York et al. to the U.S. Senate Comm. on Env't & Pub. Works 3 (Nov. 15, 2021).

13

For example, in response to contamination from PFAS, including from PFOA and PFOS, New York has had to provide over 2,000 locations across the state with alternate water supplies, such as bottled water, treatment systems, or connections to public water systems. *See* N.Y. Div. of Env't Remediation, Dep't of Env't Conservation, *2022/2023 Annual Report* 28 (2023). Similarly, Colorado had to provide thousands of residents with alternate water supplies and treat contaminated wells in the Security-Widefield area after unsafe levels of PFOA and PFOS entered public water systems through use of firefighting foam on a nearby military base. *See* Agency for Toxic Substances & Disease Registry, *Per- and Poly- fluoroalkyl Substances (PFAS) Exposure Assessment Report: Security-Widefield, El Paso County, Colorado* 3–4 (June 2022). States have also needed to prohibit public contact with surface waters in some instances, to the detriment of residents and tourists who recreate there. *See, e.g.*, *High Levels of Perfluorinated Compounds in Lake Holloman*, NMHealth (May 9, 2019) (warning the public not to drink water or swim in water at Lake Holloman).

PFOA and PFOS contamination has also hurt States' agricultural industries. For example, a dairy farm and major agricultural business in

Clovis, New Mexico, was forced to euthanize over 3,500 cows exposed to PFOA and PFOS contamination because they produced milk that contained unsafe levels of those chemicals. *See* Jordan Honeycutt, *State of New Mexico Helping Clovis Dairy That Had to Euthanize Cows*, KRQE News (May 19, 2022); *see also* N.M. Env't Dep't, Approval of Application for Depopulation & Removal Plan with Narrative to Application for DIPP Cow Buy-Out Indemnity Benefits for Highland Dairy Cow Herd: Animal Deaths Caused by Cannon Air Force Base PFAS Contamination 13–15 (May 12, 2022).

In recognition of the dangers posed by PFOA and PFOS, at least thirty States have taken action to protect their residents and natural resources from the harms posed by PFOA and PFOS. *See* Off. of Land & Emergency Mgmt., *Regulatory Impact Analysis (RIA) of the Final Rulemaking to Designate Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances* 89–112 (Apr. 2024). Such actions have included adopting regulatory structures, standards, screening levels, programs, and guidance values for PFAS in drinking water, ground water, surface water, soil, biosolids, air, and other

media. *See id.*; *see also* Interstate Tech. Regul. Council, *PFAS Regulatory Programs Table* (Sept. 2023).

Indeed, several States have designated PFOA and PFOS as hazardous substances or their equivalents under state law.[4] This includes Alaska, which has determined that PFOA and PFOS not only may present a substantial danger to public health, welfare, and the environment, as the EPA found in its rulemaking, but that these chemicals "present[] an *imminent* and substantial danger to the public health or welfare." Alaska Stat. § 46.03.826(5)(A) (emphasis added). Additionally, twenty-five States have established regulations to prohibit or control the use of firefighting foam that contains PFAS, including PFOA and PFOS. *See Regulatory Impact Analysis*, *supra*, at 92–96. And many States have taken actions to eliminate PFAS, including PFOA and PFOS, in food packaging and textile products. *See id.* at 96–100.

---

[4] *See* Alaska Admin. Code tit. 18, §§ 75.341 tbl.B1, 75.345 tbl.C; Colo. Code Regs. § 1007-3 pt. 261 app. VIII; 7 Del. Admin. Code § 1375-2.0; Del. Div. of Waste & Hazardous Substances, *Hazardous Substance Cleanup Act Screening Level Table Guidance* app. A (Oct. 2024); 301 Mass. Code Regs. 41.03(13); Mich. Admin. Code r. 299.44; N.J. Admin. Code § 7:1E app. A; 6 N.Y.C.R.R. § 597.3; Wash. Admin. Code § 173-201A-240.

Because of collective efforts to remediate contamination, PFOA and PFOS levels in surface waters and blood have been declining. *See* Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 87 Fed. Reg. 54415, 54427–28 (Sept. 6, 2022); 89 Fed. Reg. at 39126. However, that does not mean, as petitioners and their amici incorrectly suggest (*see* Pet'rs Br. at 13; Amicus Br. of Superfund Settlements Project in Supp. of Pet'rs and Vacatur (SSP Br.) at 16), that these chemicals should not be designated as hazardous substances under CERCLA. Section 102(a) requires that a substance present a substantial danger "when released into the environment," 42 U.S.C. § 9602(a)—regardless of whether such releases occurred in the past or are ongoing. In any event, data show that despite State efforts, these chemicals are still being released into the environment in significant quantities—facilities released over 70,000 pounds of PFOA and PFOS into the environment between 2020 and 2022. *See* 89 Fed. Reg. at 39140. And PFOA and PFOS levels are still detected in a high percentage of the U.S. population, which indicates that humans are still being exposed to PFOA and PFOS. *Id.*

17

II.    THE RULE WILL ENHANCE STATES' ABILITIES TO RESPOND TO
       PFOA AND PFOS CONTAMINATION PROMPTLY AND EFFECTIVELY,
       WHILE HOLDING THE PARTIES PRIMARILY RESPONSIBLE FOR THE
       CONTAMINATION ACCOUNTABLE FOR CLEANUP COSTS.

Congress enacted CERCLA to achieve timely remediation of sites
contaminated with hazardous substances while ensuring that the parties
responsible for the contamination bear the cleanup costs. *See, e.g.*, 89
Fed. Reg. at 39137. As decades of state experience with CERCLA
demonstrates, applying CERCLA's tools to PFOA- and PFOS-contaminated
sites will further each of these congressional goals. The hazardous-
substance designation will enhance States' abilities to respond to PFOA
and PFOS contamination promptly and efficiently, thereby protecting
human health and the environment. And applying CERCLA's tools to
PFOA and PFOS contamination is the best way to ensure that the parties
primarily responsible for the contamination shoulder the brunt of
remediation costs rather than state taxpayers or those landowners who
are not primarily responsible for the contamination. *See id.* at 39129–30,
39160.

For decades, States have played an important role in effectuating
CERCLA and thus have extensive experience with how it operates in
practice. Section 121(f) requires that federal regulations provide each

State substantial and meaningful involvement in initiating, developing, and selecting remedial actions to be undertaken in that State. *See* 42 U.S.C. § 9621(f). And section 104(d) authorizes States to take a lead role in carrying out response actions under CERCLA pursuant to contracts or cooperative agreements with the EPA. *See id.* § 9604(d)(1). *See generally* Cooperative Agreements and Superfund State Contracts for Superfund Response Actions, 75 Fed. Reg. 49414, 49415 (Aug. 13, 2010).

Additionally, CERCLA section 120(f) authorizes States to participate in the planning and selection of remedial actions to address contamination at federal facilities. *See* 42 U.S.C. § 9620(f); *see also id.* § 9620 (CERCLA's substantive and procedural provisions apply to "[e]ach department, agency, and instrumentality of the United States"). As discussed *supra* at 14, this is particularly important at U.S. miliary bases, where the use of certain materials (e.g., firefighting foam) can severely contaminate the surrounding environment and public water supplies. *See* Att'ys Gen., Comment Letter, *supra*, at 6 n.11. Further, States often pursue the cleanup of sites that are not listed on the national priorities list and have successfully brought actions against responsible parties to recover the costs of cleaning up hazardous substances that, like PFOA

and PFOS, are ubiquitous. *See, e.g.*, *New York v. Adamowicz*, 16 F. Supp. 3d 123, 144 (E.D.N.Y. 2014) (trichloroethene and tetrachloroethene), *aff'd*, 609 F. App'x 19 (2d Cir. 2015).

The Rule greatly benefits States and their residents by increasing transparency and accountability around PFOA and PFOS releases and expanding the EPA's and States' abilities to respond efficiently and effectively to PFOA and PFOS contamination. Although States have been developing their own regulatory structures to address PFOA and PFOS contamination, the EPA's designation of these chemicals as hazardous substances unlocks the full suite of tools available to States under CERCLA.

For instance, under the Rule, releases of one or more pounds of PFOA or PFOS in any twenty-four-hour period must be reported to federal, state, and local authorities. 89 Fed. Reg. at 39131, 39151; *see* 42 U.S.C. §§ 9603(a), 11004. The current Toxic Release Inventory reporting threshold for PFOA and PFOS is 100 pounds, and reported releases have been increasing in recent years. *See* 89 Fed. Reg. at 39140. Applying CERCLA's stricter reporting requirements to PFOA and PFOS will allow Amici States and their localities to respond to smaller releases sooner,

20

which will reduce exposure to these chemicals and minimize the likelihood of adverse health effects. *See id.* at 39150–51. Enhanced reporting and quick response are especially important for PFOA and PFOS because of their mobility and persistence once released. Delays in addressing releases give PFOA and PFOS more time to migrate within the environment and exacerbate contamination. *See id.*

Additionally, the Rule enables States to recover remediation costs from polluters and seek compensation for natural resources damaged by PFOA and PFOS contamination. *See* 42 U.S.C. §§ 9607, 9613(f); 43 C.F.R. § 11.15(a)(1). The availability of cost-recovery actions under CERCLA accomplishes a principal objective of the statute: to ensure that parties responsible for contamination bear site cleanup costs that are otherwise borne by taxpayers. *See* 89 Fed. Reg. at 39152. As the EPA explained in its rulemaking, such transfer of costs from taxpayers to polluters does not result in a net increase in economic costs. *Id.* at 39153 n.48. It simply changes who pays the cleanup costs, as Congress intended. *See id.*

There is no merit to the unsubstantiated arguments of petitioners and their amici that the designation of PFOA and PFOS as hazardous substances will unduly or unjustly subject millions of landowners to

21

CERCLA liability. *See* Pet's Br. at 71–77; SSP Br. at 12–14; Br. for Passive Receivers as Amici Curiae in Supp. of Remand (Passive Receivers Br.) at 13–16. States have been pursuing cost-recovery actions under CERCLA against potentially responsible parties for decades without imposing limitless or unfair liability on landowners—as petitioners and their amici speculate would result from the Rule. CERCLA provides parties that are not primarily responsible for contamination with statutory protections to limit their liability. *See* 89 Fed. Reg. at 39160–62. For example, landowners who believe that they paid more than their fair share of response costs at a site may seek contribution from other liable parties, and courts will typically allocate the parties' share of costs based on equitable factors. *See id.* at 39161–62; 42 U.S.C. § 9613(f)(1). Moreover, under CERCLA section 107(a), States can pursue cost-recovery actions only if their cleanup actions are not inconsistent with the national contingency plan. *See* 42 U.S.C. § 9607(a)(4). That plan provides a technical and detailed process for implementing response actions and creates benchmarks that may limit actions that would have no discernible human health, welfare, or environmental benefit. 89 Fed. Reg. at 39162; *see id.* at 39171–72. Additionally, a party that resolves its potential

22

liability with a State or the EPA in a judicially approved settlement is entitled to contribution protection, i.e., the ability to block third-party claims for matters addressed in the settlement. *See* 42 U.S.C. § 9613(f).

CERCLA also provides defenses to and exemptions from liability for certain types of parties, such as residential, small business, and nonprofit generators of municipal solid waste. *See id.* § 9607(p). Similarly, CERCLA excludes normal applications of fertilizer from the definition of "releases" of hazardous substances covered by the statute.[5] *See id.* § 9601(22). Petitioners' amici notably fail to mention this exclusion when they speculate that farmers who unwittingly fertilized their land using PFOA- or PFOS-contaminated fertilizer might face significant CERCLA liability. *See* Passive Receivers Br. at 19–20.

Petitioners' argument that PFOA's and PFOS's prevalence in the environment will result in CERCLA liability "everywhere" under the Rule (Pet'rs Br. at 74) improperly ignores the realities of cleanup efforts. Just as the EPA has created a strategic roadmap and developed

---

[5] As the EPA explained, application of this exclusion requires a site-specific analysis. *See* 89 Fed. Reg. at 39168–69.

enforcement discretion policies for PFOA and PFOS,[6] States have also developed plans to prioritize their cleanup efforts to protect communities from high-risk, high-concentration PFOA and PFOS exposures and ensure that cleanup costs are equitably shouldered by the parties primarily responsible for the contamination. Minnesota, for example, has specifically identified the need to avoid unfairly burdening water utilities, waste facilities, farmers, and the general public with costs that should be borne by polluters. Sophie Greene & Catherine Neuschler, Minn. Pollution Control Agency, *Minnesota's PFAS Blueprint: A Plan to Protect Our Communities and Our Environment from Per- and Polyfluorinated Alkyl Substances* 55, 86, 100, 172 (Feb. 2021).

Contrary to petitioners' speculation, there is no reason to expect that the Rule's designation of PFOA and PFOS as hazardous substances will operate differently in practice than any of the EPA's previous designations of hazardous substances. *See* 89 Fed. Reg. at 39160–62, 39170.

---

[6] *See PFAS Strategic Roadmap: EPA's Commitments to Action 2021–2024*, EPA (updated Nov. 15, 2024); Memorandum from David M. Uhlmann, Assistant Adm'r, Off. of Enf't & Compliance Assurance, EPA, to Reg'l Adm'rs et al. on PFAS Enforcement Discretion and Settlement Policy Under CERCLA (Apr. 19, 2024).

Indeed, the current list of "hazardous substances" under CERCLA includes over 800 substances, *see* 40 C.F.R. § 302.4 tbl., including several that, like PFOA and PFOS, degrade slowly, move easily through the environment, and are ubiquitous. *See* 89 Fed. Reg. at 39161–62, 39170 (discussing trichloroethene, tetrachloroethene, polychlorinated biphenyls, mercury, and arsenic). Even though people regularly come into contact with these hazardous substances, CERCLA has operated in a reasonable and fair way, generally protecting those from liability who have played little to no role in significant environmental contamination. *See id.* at 39162. Consequently, the EPA did not act arbitrarily or capriciously when it determined that the substantial advantages of the Rule outweigh the speculative possibility of litigation against parties that are not primarily responsible for PFOA and PFOS contamination. *See id.* at 39163; *see also Env't Def. Fund*, 124 F.4th at 11–13.

## CONCLUSION

For the foregoing reasons, the Court should deny the petition for review.

Dated:   January 24, 2025

                                Respectfully submitted,

                                LETITIA JAMES
                                  *Attorney General*
                                  *State of New York*


                        By:   */s/ Joshua N. Cohen*
                              JOSHUA N. COHEN
                              Assistant Solicitor General

BARBARA D. UNDERWOOD                28 Liberty Street
  *Solicitor General*               New York, New York 10005
JUDITH N. VALE                      (212) 416-8039
  *Deputy Solicitor General*
JOSHUA N. COHEN
  *Assistant Solicitor General*
PHILIP BEIN
  *Senior Counsel*
KYLE BURNS
  *Assistant Attorney General*
MIHIR DESAI
  *Assistant Attorney General*
     *of Counsel*

*(Counsel list continues on next page.)*

26

KRISTIN K. MAYES
  *Attorney General*
  *State of Arizona*
2005 N. Central Ave.
Phoenix, AZ 85004

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Ave.
Hartford, CT 06106

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
201 W. Pointe Dr., Ste. 7
Belleville, IL 62226

ANDREA JOY CAMPBELL
  *Attorney General*
  *Commonwealth of Massachusetts*
One Ashburton Pl., 18th Fl.
Boston, MA 02108

KEITH ELLISON
  *Attorney General*
  *State of Minnesota*
445 Minnesota St., Ste. 1800
St. Paul, MN 55101

RAÚL TORREZ
  *Attorney General*
  *State of New Mexico*
408 Galisteo St.
Santa Fe, NM 87501

PHILIP J. WEISER
  *Attorney General*
  *State of Colorado*
1300 Broadway, 10th Fl.
Denver, CO 80203

BRIAN L. SCHWALB
  *Attorney General*
  *District of Columbia*
400 6th St., NW, Ste. 8100
Washington, DC 20001

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 Saint Paul Pl.
Baltimore, MD 21202

DANA NESSEL
  *Attorney General*
  *State of Michigan*
P.O. Box 30212
Lansing, MI 48909

MATTHEW J. PLATKIN
  *Attorney General*
  *State of New Jersey*
25 Market St.
Richard J. Hughes Justice Complex
Trenton, NJ 08625

DAN RAYFIELD
  *Attorney General*
  *State of Oregon*
1162 Court St. NE
Salem, OR 97301

NICHOLAS W. BROWN
  *Attorney General*
  *State of Washington*
P.O. Box 40100
Olympia, WA 98504

JOSH KAUL
  *Attorney General*
  *State of Wisconsin*
17 W. Main St.
Madison, WI 53703

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 24, 2025, I electronically filed the foregoing Brief for Amici Curiae using the Court's CM/ECF system and that, therefore, service was accomplished upon counsel of record by the Court's CM/ECF system.

Dated:   New York, NY
            January 24, 2025

_/s/ Joshua N. Cohen_